Mr. Resnick. Okay. Good morning, Your Honors. May it please the Court, Matthew Resnick for Appellant Nicholas Saialao. I'd like to reserve four minutes for rebuttal. Here we have a statutory framework of 542B. It's used to impose a money judgment where the debt itself was clearly disputed. The statute requires a debt that is property of the estate to be turned over, that has matured, or is already payable on demand prior to the filing of the bankruptcy. That debt must be undisputed property of the estate. The federal statute of turnover does not circumvent state law. The trustee is arguing that a single line in the tax return is an undisputed debt. We are arguing that tax and bookkeeping classifications cannot override ownership, or at least underline ownership of the bond. You're arguing that the 542B action wasn't the correct form of action. Is that an argument you made below, and where would you direct me in the record to see you press that point? Your Honor, I wasn't the trial attorney below. Well, that's never a great answer, but. Conceded, Your Honor. How I write, I do, the record shows on many occasions that they didn't provide that the debt was undisputed. No, that's the reason why you think 542B isn't the appropriate vehicle. I get that, but did you, was that argument ever made that, hey, you can't do this under a turnover action? I just, I'm not sure I see that in the district court record. And I understand that as I review the record just this weekend, I understand what you're articulating here, and I think it's because they all went down the rabbit hole of whether or not loans that came in and loans that came out was actually a mathematical equation. I don't think they actually ever got to whether the debt was mature or payable on demand. Right, but then isn't, isn't that a forfeiture waiver problem if it wasn't raised below? Yeah, I don't think that, that the statutory framework of 540, 543B that Congress intended, 542B, I apologize, Your Honor, that Congress intended for that to be just circumvented irrespective of the arguments of the trial courts that were argued below the trial courts. That would provide a precedent that would unfortunately affect third parties that may or may not. So you think the argument's sort of unwaivable? It's an unforfeitable or unwaivable argument? I do believe that it is. Interesting, okay. And that's because I believe that the statutory framework, in fact, I don't believe that not arguing it would immunize a legal error, which I believe was clear based on the statute and based on the representations that were both made to the court about the character of the debt and whether the debt was actually disputed. And again, we're looking at tax bookkeeping classifications. Clearly those were disputed. Clearly there was a mechanical formulation that was provided by the court in determining whether or not this amount was actually owed. But there was never a vested interest. It was never matured. It was never payable on demand. And I think that's what we were really articulating in our brief. Well, what's the best evidence in the record that you can point us to? Actual evidence in the record that your client lent money to Pandora? That's a great question, Your Honor. And I don't think that we actually had to demonstrate that. Putting that aside, I get it. You don't think you had to demonstrate it. But is there any evidence in the record that shows that Nicholas Salao loaned money, transferred money to Pandora? Well, there's no money. There's nothing in the record other than in the new trial, in the request for the new trial, where the Chase bank statements were provided. And that clearly showed that there were wire transfers going to the Pandora hospice care account. But the burden wasn't on the debtor. I mean, the burden wasn't on the defendant. The burden here is on the trustee. They're the ones who are to demonstrate the raise, the property. What was transferred? Just by a preponderance, right? They just had it demonstrated by a preponderance, right? Certainly by a preponderance. And so they put in a tax return that seemed to suggest $137,000 loan to Mr. Salao. And there was nothing on the tax returns indicating a transfer from Mr. Salao to Pandora. Correct. Those tax returns were prepared in May of 2017, right before filing, 2014, 2015, 2016. So if that sort of meets the... So now we're reviewing for clear error, whether or not that entry on the tax return provides a preponderance of the evidence, right? That's sort of the structure in which it comes to this court. I believe so, Your Honor. And I think that there is case law that says that tax filings are merely self-prepared documents, not third-party admissions, and certainly are insufficient to establish ownership or liability. It's as if the trustee provided to this court a chart without coordinates and said, use the statute to go find... Do you know why Mr. Salao didn't argue set-off? Well, set-off, I don't... Because there was no property of the estate. And most importantly, there was never any money loaned to Mr. Salao. Well, right. But he understood he may lose that argument. So couldn't you have argued, or couldn't counsel at the time have argued in the alternative that to the extent you find this was a loan from Pandora to Mr. Salao, it would be subject to set-off? Well, again, there was... And I don't mean to sound redundant here, Your Honors. But I believe that at first they looked at and determined whether or not there was a matured or payable demand. And once there wasn't a matured or payable demand, they asked for that evidence. And once that evidence wasn't provided, well, certainly the amended returns undermined the trustee's argument as to whether or not that tax inclusion or that categorization, for whatever purposes it was there, it was either a mistake or perhaps it was strategic. But irrespective, it didn't create title or ownership to that land. But I sort of get the trustee's point that once you've got a debtor in bankruptcy who's amending tax returns, that can be done for a lot of reasons at that point, right? Well, I admit that it could be self-serving, but it could be self-serving on the other manner as well. I mean, why wasn't there any discovery done by the trustee? The trustee could very easily have reviewed the documents. The trustee stands in the shoes of the debtor. The trustee has access to all the financial records, all the bank records of the debtor. It might take a little bit of time, but they certainly have that authority. Yeah, this just seems like a case where neither side did a great job of kind of proving up the facts of the case on the record. And then the bankruptcy judge said, I think a couple of times, this is the closest call I've ever seen. And now we're reviewing that for clear error. Yeah, it brings me back to when I first met with the client and I said, and Judge Yoon, the trial court judge, is a fantastic bankruptcy judge. He's a fantastic advocate, and he's a fantastic bankruptcy judge. But I think that they kind of bridged the property of the estate and kind of presupposed that it was already property of the estate before we even got to whether or not it was matured or payable on demand. But I agree with you. It seems like it was convoluted from day one. The trial briefs articulated 542B. I'm sorry, Your Honor, 542B. But once we got to trial, it seemed like it turned into more of a mathematical thing. I think the judge called it a binary concern. You know, just because there was money lent doesn't mean that there wasn't money that was owed. Well, I think that at the very least, you have to demonstrate what money was provided by the debtor to Mr. Silow to determine that that is the actual amount owed. In fact, the record went from $135,000 to $137,000. Then the amended returns were filed. So I think that there was enough doubt casted that you couldn't really say that there was a vested interest, that there was really property of the estate. Why was the new trial? I mean, so you come forward with that. Your counsel at the time comes forward with evidence about the payments from the bank. Is it just too much time had passed? Was that the idea? Well, I think there was some manifest error of law. And clearly the court had obfuscated A, 542A and 542B. A couple times they mentioned that it has to be something that the trustee can sell. That's from 542A. It said a couple times that it would have to be inconsequential in value. That's 542A. Then it went to the mathematical equations. I think that somewhere it went off the tracks. And 542B, the matured element, the payable on demand, was never articulated by either side. But the statute is what the statute is. Congress didn't intend for that statute to be ignored, and nor do I believe that the court should ignore the statute as it's written, whether it's matured or payable on demand. There are lots and lots of causes of actions that the trustee could have brought on that day. But the cause of action they decided to bring was 542B. And that statute circumvents any state lawsuits. But one of the reasons you said it shouldn't be waivable is because it impacts third party rights in the context of bankruptcy. But here I think third parties would benefit, right? If by failing to raise this issue, it actually returns some $190,000 to the benefit of other creditors of Pandora because Mr. Slough declined to, in part because to raise this argument below, right? So your concerns about implicating third party rights aren't necessarily bearing out in this case. Well, I think that was addressed actually in the charter case that's briefed. And it specifically says, why should it be a sanctioned act just because the entity seeking to collect disputed funds happens to be a debtor in bankruptcy, meaning for the benefit of all the creditors? Why should that be for the benefit? The bankruptcy doesn't all of a sudden create this veto power or this pass-through or this get-out-of-jail-free card, irrespective of the arguments that were made in the trial court. And I think that is the concern here. And I think that is the reason why the ruling should be overruled. I would like to reserve the rest of my time unless there's any questions. No, go ahead. Thank you, Your Honor. Good morning. Tom Polis on behalf of the Chapter 7 trustee, Carl T. Anderson. May it please the court. As the party that prevailed both at the bankruptcy court level and at the district court, I will summarize some of the arguments. But I would ask the court, obviously, to respectfully affirm what both the bankruptcy court and the district court has already ruled on. As far as Your Honor's raised the issue that the bankruptcy judge, Judge Yoon, a very well-respected bankruptcy judge down in Riverside, made the comment that this was a close call. But not withstanding that, he had to make a decision. It was either closed for the other side or closed for the trustee. The court ruled on various factors. The fact that we talked about the tax return, the 2016 tax return, which was in dispute, was corroborated by the 2015 tax return. And Mr. Slough signed both tax returns. All that showed was that there was a there was a loan for $127,000. $137,000. Sorry, $137,000. Yeah, a loan payable by the shareholder, Mr. Slough, back to the corporate debtor. My client, the trustees. So is there, I mean, the amount here is $135,000, not $137,000. Is there more evidence that ties this payment? Let's assume there's a loan. I think that's a fair assumption. Is there other evidence that ties this to there? There was no like loan document, there was no payment plan, nothing like that. Nothing that we were able to find. And as far as what we see a lot in small family held businesses, as far as documentation of loans from insiders to the corporation and vice versa, usually there's not a lot of notes or whatever, promissory notes, deeds of trust, if it's recorded or collateralized by real estate. So to answer your Honor's question, no, we didn't have any. And we relied, like we do a lot when I represent trustees, that this tax return signed under penalty of perjury by the appellant. I'll tell you what I'm struggling with. And, you know, I just think that forced to guess, I would bet that Mr. Slough had loaned money to Pandora and his brothers as well. It just seems to me, you look, this is a company that its revenues were not exceeding its expenses. So if it was paying its bills, the money had to come from somewhere. Presumably that's external. And because there weren't other creditors making claims in bankruptcy, presumably it was somebody like the Slough brothers. So left to my own devices, I would assume that Mr. Slough had lent money to the company. And if he'd lent money to the company, I would assume that the money going back was a repayment of those loans. What I'm struggling with, though, is that's what I might do if I were sitting there as a bankruptcy judge, but now it's a clear error standard of review. And so trying to put those together is what's been my struggle in this case. And I understand that. And I guess there's a distinction in the world I see, the bankruptcy world, that are those monies that are going back into the business, are they loans? Are they equity infusions? And it gets very fuzzy when it's a closely held business like this. And again, the fact that there were no notes and no notes presented at trial, if in fact he did make loans and he didn't file a proof of claim in the bankruptcy, if he did make loans back to the corporation... They were listed on the creditor's schedule. There wasn't listed as a creditor. They were listed as a creditor. I think they were... I don't know if they were listed as disputed, but at trial, when push came to shove, so to speak, there was nothing along those lines presented. And that's what I think Judge Yoon made the comment. And it was kind of like, hey, you had your day in court and you failed to do that. And this is that. So but a big thing that seemed to drive the bankruptcy judge was the fact that there weren't records showing that Mr. Slaoui transferred money to Pandora. You'd agree with that, right? Yes, I would. And then they brought forth the records and said, we'd like a sort of new trial on this element. And he said, no, right? He said, no, you had your chance. And noted in the district court's opinion, Judge Yoon had a problem with the credibility of Mr. Slaoui in the fact that he said, oh, I'm a passive investor. This is just kind of the family business. I don't have much to do with it. When it turns out, he signed the tax returns. He wrote checks on behalf of the corporation. So as far as saying, I'm just a passive investor. It's my brother's business, blah, blah, blah. It turns out he was more than that. But hearkening back to an earlier case today, there's no suggestion the bank records are fabricated, right? No, we've not made that suggestion. But again, I would ask the courts, and I'll leave any, if the court has any questions and the panel has any questions for me, that especially the district court opinion that laid out sort of the roadmap on all the issues as far as the pieces of the puzzle. We used that on an earlier case today. The pieces of the puzzle showed that there was a loan. There was a 2015 tax return, the 2016 tax return. And as the evidence provided, Mr. Anderson, the trustee, we see a lot where after you, I don't want to say get your hand caught in a cookie jar, but sort of speak, hand caught in a cookie jar. Not entitled to benefit of the doubt. Well, the IRS, somebody relied on those tax returns in those prior years. You're sort of a stop later to say, oh, Mr. Trustee, and by the way, the trustee. I don't see their argument, maybe I'm wrong. As there was no loan, I think they're saying this payment was for something else. Am I wrong about that? But payment for what? Well, I thought there was also, I thought the question was, there was an earlier loan. I thought it was which loan was the 130? I think it was one loan. And it was the same receivable, the same shareholder. And so, and again, corroborated by the 15 return and the 16 return. I think what the bankruptcy judge said, if I'm not mistaken, is even if Mr. Salao had loaned $440,000 to Pandora, that doesn't mean Pandora could not have the next year loaned $137,000 to Mr. Salao. That both things could be true, right? I think that was what he said. He used the word, as counsel noted, the binary concept. It doesn't have to be one or the other. It could be both. So rather than the 137 being a payment on the 442, it could just be a new loan to Mr. Salao, notwithstanding this, that he's also owed 442 on this note. So he'd still be owed 442 after he paid back the 137. It could be a loan both directions. He's an unsecured creditor. So if the 137 is paid to the estate, he would share pro rata with the other creditors. And again, you raised the issue about the set-off defense. Never raised at trial. Never raised in a pretrial statement. So and again, I sort of feel bad for counsel that he sort of had to pick up the ball at this point, but those issues have been raised. If it had been raised, would you concede they're linked in a way that set-off would apply to them or not? I'll say it depends, typical lawyer statement. But yes, it could be that there could be some set-off. But again, there's issues of set-off, mutuality, timing, blah, blah, blah. So again, I see that there's a few minutes left. I would ask, unless the court has any questions, I would ask your honors to please affirm both what the bankruptcy court has done and what the district court. And thank you. Thank you. Thank you. We'll give you rebuttal. Thank you, your honors. I think there is one consensus here, and that is that there was no tracing done, that there is no documents, and that there really was no property that was identified that was actually loaned. All we had was this tax return. And I believe that was insufficient evidence. Why? I mean, if it was insufficient evidence, then he lied to the IRS? I don't understand. Well, that's why there was an amended return. And I believe it's declaration under penalty of perjury. And in all cases, whether it's legal or whether it's taxes, it's to the best of your information and ability. And this was a nurse practitioner. He was a passive investor. He also took over the business after his brother, who was the doctor. And the amended return took off the loan at all? Yeah, and that was merely... But, I mean, why was whatever put on there? I mean, even if you amended it, it's like, oh, wait, now I understand the implications of saying it's a loan. Now I want to change my mind. I certainly don't want to bore you with the facts of the case. I don't, because I know you know the facts of the case. But the debtor took over... The defendant, Mr. Silow, took over once the real owner, the one who was managing the property, managing the business every single day, had cancer. There was no more referrals because he was the doctor who would get the referrals. And all of a sudden, Neil pops in there. No tax returns were done for a couple of years as he was dealing with the cancer and as he was dealing down with the winding down of the company. So here we go. We go to an accountant. The accountant prepares all the tax returns. We want to file for bankruptcy because we want the trustee to administer all the receivables after... So that's why I've been wondering why the first tax return was filed a couple of years late. But that's why it's... That's right, exactly. They were all filed in May of 2017. They go to the 341A. They hear that, hey, look at this loan to officers. That can't be right. They go back. Keith Owen of Venable goes back to the trustee and says, hey, that was wrong. Here's some amended returns. This is around November, December. It wasn't as if it was two or three or four years later. It was literally six months later when those returns were amended. So the first one was filed after the declaration of bankruptcy or not? I think it was right before the bankruptcy. And then after the amended comes in. Just a few months later. And the amended comes in after the 341A hearing. Yes, the trustees meet. Maybe I'm asking the same question that Judge Cole asked earlier. But I mean, maybe you're right on this. But why did the... Give your best case for why the bankruptcy court committed clear error with these facts in hand. It could go either way. It's a toss up. Well, I think there was manifest error just in the law, in the application. I think just as we're speaking here now, we see it's a disputed debt. And that it wasn't matured. And the code section specifically says it must be matured or payable on demand. But that argument wasn't made below, right? Well, it was back and forth. Was it precisely made? No. But was it argued by the trustee? Well, where should I look in the record for how it was most closely argued on behalf of your client that it doesn't meet 452B's requirement? 542B. 542B's requirement. Thank you. I apologize. I might have put you down the wrong track with that. I get my numbers confused as well. You know, I don't think directly in the record does it say that this debt isn't matured or that this debt isn't payable on demand. But what it does show is that the debt is disputed. And where the debt is disputed, this type of action can't be found under 542B. We just can't skip over the statute. There were lots of ways that the trustee could file a cause of action. And take, by the way, the same amount of time. There's Mount Quantum Merowith. There's accounting. There's breach of contract. There's preferences, by the way, in which you can go back after the insider for payments that were made to the insider. Sure. I was actually, although it looked like this may have been outside the preference period or not. Yeah, it's more than two years before. 2015 is when the loan reimbursements were made. But then there's a fraudulent conveyance that can go back four years. You're not disagreeing there was $135,000 payment made. You're just saying there was no loan for that. There was loan repayments made to Mr. Silow as well as reimbursement expenses. It wasn't just loan repayments. If you look at the memos, if you look at the actual checks that are in the record, they'll say loan reimbursement or they'll say... I thought they all said loan repayments. Reimbursement or reimbursement for expenses. Oh, did some say reimbursement? I believe so. Okay, all right. I'll look again. All right. Your Honor, it looks as if you've really read the record, so I might have conflated a couple things. But the testimony of Mr. Silow certainly says that some were loan reimbursements and some were expenses. And I hate to misdirect you in the wrong manner, Your Honor. And with that, I don't believe that... We forgot about the prejudgment interest. Right. And I believe 3287. And I think right now we can determine that that... We never knew when the property vested. We never knew with the determination of the loan. So the prejudgment interest... Your point is that it can only... If it accrues at all, it can only accrue at the time that the trustee filed its action. No, you think it doesn't accrue at all, right? I don't believe it accrues at all, Your Honor. I don't believe it ever... But why not when the trustee files the action? What's your best argument that it isn't... When the trustee files the action, why isn't that the demand on the amount? And that's when prejudgment... Because it's a federal statute. And this determines a property right. And property rights under Butner are determined under state law. And state law is under 3287. And 3287 specifically says that it must be ascertainable, identifiable, and a vested interest. And I think that undermines the argument with respect to just the 542B argument. And with that, I conclude, Your Honor. Thank you. We ask for reversal. Thank you. Thank you to both counsel for your arguments in a technical case. And you've helped us out. Thank you, Your Honor. The case is now submitted.
judges: NELSON, VANDYKE, Cole